UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 2 4 2019

Joshua Schleifer,

          Plaintiff,

—v—

Lexus of Manhattan, *et al.*,

          Defendants.

17-cv-8789 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

Plaintiff brings this suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), alleging that the Defendants sent him unsolicited text messages using an automatic telephone dialing system. First Amended Complaint ("Amen. Compl."), Dkt. No. 52 ¶¶ 19-30. Defendant BRAM Auto Group LLC ("BRAM LLC") is allegedly the parent company of Lexus of Manhattan, which is alleged to have owned the phone number used to send Plaintiff the offending text messages. *Id.* ¶ 24. Defendant Zipwhip is a "texting software provider" that was allegedly engaged to service the text message campaign. *Id.* ¶¶ 10, 25. Defendants BRAM LLC and Zipwhip have brought the instant motions to dismiss for lack of personal jurisdiction and failure to state a claim. For the reasons given below, both motions are DENIED.

I. **LEGAL STANDARDS**

A. **Rule 12(b)(2)**

When a defendant moves to "dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). "If the defendant is content to challenge only the

1

sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013). To make this *prima facie* showing, a Plaintiff must show three elements: "First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective . . . Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)). And at this "preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Dorchester Fin. Sec.*, 722 F.3d at 85. These allegations "must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). The court will "constru[e] all pleadings and affidavits in the light most favorable to the plaintiff and resolv[e] all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

B.  **Rule 12(b)(6)**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim achieves "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully," *id.*, and if plaintiffs cannot "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed," *Twombly*, 550 U.S. at 570. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). When considering a motion to dismiss under Rule 12(b)(6), "a court must accept as true all of the [factual] allegations contained in [the] complaint[.]" *Iqbal*, 556 U.S. at 678. However, the court should not accept legal conclusions as true: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In resolving a motion to dismiss under Rule 12(b)(6), review is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## II. BRAM LLC'S MOTION TO DISMISS IS DENIED

Defendant BRAM Auto Group LLC (BRAM LLC) moves to dismiss Plaintiff's Complaint under Rule 12(b)(2) for lack of personal jurisdiction. In the alternative, BRAM LLC moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. The Court addresses each argument in turn.

### A. BRAM LLC's Motion to Dismiss for Lack of Personal Jurisdiction is Denied

In support of its motion to dismiss for lack of personal jurisdiction, Defendant BRAM LLC submits declarations and evidence to show that the entity Plaintiff named in his Amended Complaint and summons, BRAM LLC, was dissolved as of April of 2015. Coscia Decl., Dkt.

3

No. 67, ¶ 5, Ex. B. BRAM LLC contends that since the named entity was dissolved, service was not properly effected and the Court does not have personal jurisdiction over this dissolved entity. BRAM LLC Mot., Dkt. No. 69, at 5-7. Plaintiff counters that "[a]t most Plaintiff may need to amend the caption" of his Amended Complaint. BRAM Mot. Opp., Dkt. No. 75, at 1. The Court addresses the arguments about service and personal jurisdiction in turn.

Plaintiff's Amended Complaint and summons refer to BRAM LLC as the Defendant. Defendant's evidence establishes that BRAM LLC ceased to exist in 2015. Dkt. No. 67 ¶ 6. Furthermore, BRAM LLC was "formed for the purpose to hold a registered service mark but was never used" and was dissolved a mere four months after its creation. *Id.* ¶¶ 5-6. However, it is undisputed that an entity currently exists named Bay Ridge Automotive Corp. and that this entity has the alternate names "BRAM Auto Group" and "BRAM." BRAM LLC Rep., Dkt. No. 84, at 2. It is also undisputed that Plaintiff served the Amended Complaint on Ms. Jacquelin Calderon, the Director of Payroll as Bay Ridge Automotive Corp., at the company's office. BRAM LLC Mot. at 5. Ms. Calderon did not refuse service and an affidavit of service was filed on the docket. Dkt. No. 76-6. Since it is undisputed that Bay Ridge Automotive Corp. existed at the time of the allegedly offending conduct and BRAM LLC had not only already been dissolved but had never been used, this is not a case of successor liability. Instead, it comes down to the fact that Plaintiff named "BRAM Auto Group *LLC*" where it appears he should have named "BRAM Auto Group" or "Bay Ridge Automotive Corp."

This is not grounds to dismiss Plaintiff's claims. Including an incorrect variation on a name in a summons and complaint is merely "a technical defect." *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 (JG) (VVP), 2011 WL 7053807, at *45 (E.D.N.Y. Jan. 4, 2011), *report and recommendation adopted*, No. 08-cv-00042 (JG) (VVP),

4

2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012). Indeed, this case is remarkably similar to *Precision Associates*, in which the complaint and summons read "Geodis Group" instead of "Geodis S.A." *Id.* Accordingly, "the appropriate remedy at this stage would not be to dismiss the claims but to serve an amended summons" on the correctly-named defendant. *Id.*; *see also Baskin v. Lagone*, No. 90-cv-5478 (RPP), 1993 WL 59781, at *5 (S.D.N.Y. Mar. 3, 1993) (holding that although complaint failed to include the correct names, the "flexible rules of service under Rule 4 require a denial of the motion to dismiss" and the serving of an amended summons). This is consistent with the general principle that courts should avoid dismissing a case for defective service "where dismissal would be without prejudice and 'probably would lead to the reinstitution of the suit by the plaintiff' and thus 'needlessly burden[] the parties with additional expense and delay and postpone[] the adjudication of the controversy on its merits.'" *Kwon v. Yun*, No. 05-cv-1142 (GEL), 2006 WL 416375, at *5 (S.D.N.Y. Feb. 21, 2006) (quoting 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1354).

And while amending the summons might not be the proper remedy if Bay Ridge Automotive Corp. lacked notice or would be prejudiced, there is no showing of either here. *See Baskin*, 1993 WL 59781, at *5. To the contrary, the Bay Ridge Automotive Corp. Controller and Director of Payroll have submitted declarations in this case on this very issue. *See* Coscia Decl., Dkt. No. 67, ¶ 1; Calderon Dec., Dkt. No. 68, ¶ 1. As to prejudice, if anything it is BRAM LLC's behavior that has a whiff of gamesmanship, since Plaintiff's counsel represents that "despite numerous conversations with counsel for Defendant BRAM Auto, BRAM Auto's motion to dismiss was the first time it was noted that Defendant BRAM Auto claimed service had not been achieved." Pl. BRAM Opp. at 12. Accordingly, the correct remedy is for Plaintiff to serve an amended summons, not dismissal.

Turning to BRAM LLC's motion to dismiss because the Court cannot exercise personal jurisdiction over the dissolved entity, this fails for the same reasons. BRAM LLC contends that because the allegedly offending activity occurred in 2017 and BRAM LLC was dissolved in 2015, the Court cannot exercise personal jurisdiction over BRAM LLC. Yet, BRAM LLC does not dispute that Bay Ridge Automotive Corp. existed in 2017 and continues to exist today. BRAM LLC Rep., Dkt. No. 84, at 2; Dkt. 76-4. Accordingly, since Bay Ridge Automotive Corp. is the correct defendant, the dissolved status of BRAM LLC is irrelevant.

For the reasons above, BRAM LLC's motion to dismiss for defective service and lack of personal jurisdiction is DENIED.

### B. BRAM LLC's Motion to Dismiss for Failure to State a Claim is Denied

BRAM LLC's motion to dismiss under Rule 12(b)(6) for failure to state a claim relies on the same argument that BRAM LLC was dissolved in 2015. For similar reasons, this motion is also denied. The misidentification of "BRAM Auto Group" or "Bay Ridge Automotive Corp." as "BRAM Auto Group LLC" in the Amended Complaint is no more than a "technical defect" that does not warrant dismissal of Plaintiff's claims, but simply an amendment to the name in the complaint. *See Precision Assocs.*, 2011 WL 7053807, at *45. Accordingly, BRAM LLC's motion to dismiss for failure to state a claim is DENIED. Within one week of the date of this Opinion and Order, Plaintiff shall refile his Amended Complaint with "BRAM Auto Group LLC" replaced by either "Bay Ridge Automotive Corp." or "BRAM Auto Group LLC." Plaintiff shall then serve an amended summons on the correct Defendant.

### III. ZIPWHIP'S MOTION TO DISMISS IS DENIED

Turning now to Defendant Zipwhip, it moves to dismiss Plaintiff's Complaint for lack of personal jurisdiction and failure to state a claim. The Court addresses each argument in turn.

## A. This Court has Personal Jurisdiction over Zipwhip

Three elements are necessary for a federal court to exert personal jurisdiction over a defendant: (1) "service of process upon the defendant must have been procedurally proper," (2) "there must be a statutory basis for personal jurisdiction that renders such service effective," and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci*, 673 F.3d at 60. Zipwhip contests the latter two elements.

### 1. There is a Statutory Basis for Personal Jurisdiction Against Zipwhip

Absent a federal statute authorizing service, "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located." *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). As is relevant to this case, the New York long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state." N.Y. C.P.L.R. § 302(a); *see also Licci*, 673 F.3d at 60. Plaintiff argues this Court has specific jurisdiction over Zipwhip under both § 302(a)(1) and § 302(a)(2).

As to the former, § 302(a)(1) is divided into two prongs: "transacts any business within the state" and "contracts anywhere to supply goods or services in the state." Under the second prong, it can be sufficient for a party to enter into a contract to supply goods or provide services in New York, even if the party never enters the state. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789 (2d Cir. 1999) ("even if a defendant never enters the state to negotiate one of these contracts, to complete performance or for any other reason, the second prong of § 302(a)(1) can provide long-arm jurisdiction over a defendant who has minimal contacts with the state and who has entered a contract anywhere to supply goods or services in

7

the state"); *see also Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36-37 (2d Cir. 2001) (sufficient for personal jurisdiction under § 302(a)(1) for there to be a contract to ship goods to New York and the goods were shipped). Even if the provision of services or shipment of goods only "covers an area that includes New York, personal jurisdiction is proper." *Holbrook Plastic Pipe Supply, Inc. v. Jackson*, No. 04-cv-03211 (ADS), 2006 WL 8441408, at *4 (E.D.N.Y. Jan. 3, 2006) (citing *Alan Lupton Assocs., Inc. v. Ne. Plastics, Inc.*, 105 A.D.2d 3 (4th Dep't 1984)). In addition, "the plaintiff need not be in privity of contract with the supplier . . . to sustain jurisdiction." *Id.* (citing cases). It is necessary, however, that the cause of action arise from the relevant contracting activity. *See, e.g., Opticare Acquisition Corp. v. Castillo*, 2005 N.Y. Slip Op. 08296, WL 3005744, at *6 (2d Dep't Nov. 7, 2005); *Great N. Ins. Co.*, 75 F. App'x at 826. The Court applies this standard here.

Under the second prong of § 302(a)(1), Plaintiff has sufficiently made a *prima facie* showing of personal jurisdiction. Plaintiff alleges and Zipwhip does not dispute that Zipwhip contracted to provide its text messaging "packages" to "Lexus of Manhattan, Bay Ridge Lexus, Audi Brooklyn, and Bay [R]idge [sic] Nissan." Dkt. No. 92-1 at 1-2. Lexus of Manhattan has a principal place of business in New York State. Amend. Compl. ¶ 8. Plaintiff also alleges that Zipwhip contracted to "begin text servicing" of individuals who were not Lexus clients on Lexus' behalf. Amend. Compl. ¶ 25. This allegedly led to Plaintiff, a New York resident, receiving "unsolicited text messages" to his wireless phone number from a number "owned by Lexus" with a New York City area code.[1] This is sufficient, at this stage of the litigation, to

---

[1] Though it is not specifically alleged in the First Amended Complaint, Amen. Compl. ¶¶ 19-20, the Court takes judicial notice of the fact that 212 and 917 are area codes for New York City. *See* New York State, Department of Public Service, Area Codes of New York State, http://www3.dps.ny.gov/W/PSCWeb.nsf/ArticlesByTitle/372B3F1B8B72AB5B85257687006F393A?OpenDocument

make a *prima facie* showing that Zipwhip contracted to provide a service in New York and that this service was provided. It is true that Plaintiff has not specified the precise nature of Zipwhip's alleged "servicing." And Zipwhip refers to itself as providing a "software platform" or "software product." Zipwhip Rep. at 2, 4-5. It may be that further discovery will reveal that what Zipwhip provided to Defendant Lexus is more properly characterized as a "good" than a "service." However, it is not necessary at this stage of the litigation for Plaintiff to plead the "technical detail[s]" of how the allegedly offending text messages were sent. *See Snyder v. Perry*, No. 14-cv-2090 (CBA), 2015 WL 1262591, at *8 (E.D.N.Y. Mar. 18, 2015). And even if it emerges that what Zipwhip provided was a product, not a service, § 302(a)(1) applies to both goods and services alike. N.Y. C.P.L.R. § 302(a)(1).

Zipwhip's arguments to the contrary are unavailing. Zipwhip argues that on a 12(b)(2) motion, the Court cannot rely on Plaintiff's allegations if they are contradicted by a declaration. Zip. Rep. at 3-4. Yet the declaration offered by Zipwhip does not controvert any of the above allegations on which this Court relies to reach its conclusion. Dkt. No. 82. Zipwhip also seeks to analogize to decisions in which courts held that operating a website that is viewed in New York will not confer personal jurisdiction. Zip. Rep. at 4-5. Yet those cases dealt with "passive websites . . . which merely impart information without permitting a business transaction." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 240 (2d Cir. 2007) (claim arising from allegedly defamatory comments posted on a website about a New York-based company). These cases are plainly distinguishable from the allegations of a contract to provide text messaging services in New York.

Because the Court concludes that a statutory basis for personal jurisdiction exists under § 302(a)(1), it finds it unnecessary to reach the question of whether jurisdiction exists independently under § 302(a)(2).

### 2. Exercising Personal Jurisdiction over Ziphwhip Would Not Violate Due Process

Even where a statutory basis for personal jurisdiction exists, a court must also ensure that "jurisdiction comports with federal due process." *Mario Valente*, 264 F.3d at 37–38. Turning now to the due process analysis, a court may exercise specific jurisdiction over a non-resident defendant if three conditions are met: "First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State . . . Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct . . . Finally, the exercise of jurisdiction must be reasonable under the circumstances." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (citing cases) (internal quotation marks omitted). The Court concludes that all three elements are present here.

Plaintiff has sufficiently alleged that Zipwhip directed its conduct to New York State. This "inquiry is satisfied if the defendant has purposefully directed [its] activities at residents of the forum." *Id.* (internal quotation marks omitted); *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) ("[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." (quoting *Licci*, 732 F.3d at 170)). Plaintiff alleges and provides evidence to support that Zipwhip contracted to provide Lexus of Manhattan, located in New York, the ability to send automated text messages. Dkt. No. 92-1 at 1-2; Amend. Compl. ¶¶ 8, 25. Plaintiff also alleges that Zipwhip contracted to begin the text servicing that resulted in text messages from a New

York phone number being sent to Plaintiff, a New York resident. Amend. Compl. ¶¶ 20, 25. This alleged contract involved Ziphwhip directing its activity towards New York. And this contract would also make it foreseeable that Zipwhip would be haled into court in New York for its role in the alleged text messaging campaign. This is sufficient to allege that Zipwhip directed its conduct towards New York.

The second condition is also met. "[A] claim arises out of forum contacts when defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum." *U.S. Bank*, 916 F.3d at 151 (citing *Licci*, 732 F.3d at 169-70). Plaintiff alleges that Zipwhip's contracting to provide text servicing led directly to Plaintiff receiving the relevant text messages, which are the basis of his claim. This is sufficient to allege that Plaintiff's injuries arose out of Zipwhip's contacts with New York.

Finally, the exercise of personal jurisdiction is reasonable under the circumstances. As to this third element of specific jurisdiction, "a court considers [the forum] contacts 'in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *U.S. Bank*, 916 F.3d at 151 (quoting *Charles Schwab*, 883 F.3d at 82). Zipwhip provides no reason why the exercise of personal jurisdiction would not comport with fair play or substantial justice, nor does the Court discern any. Zipwhip allegedly contracted to allow a New York resident to engage in the conduct that injured another New York resident. There is no resulting unfairness or injustice in Zipwhip's being brought into court in New York as a result of this activity.

For the reasons above, the Court concludes that at this stage of the litigation, Plaintiff has sufficiently alleged personal jurisdiction over Zipwhip. Zipwhip's motion to dismiss for lack of personal jurisdiction is therefore DENIED.

## B. Plaintiff Has Sufficiently Stated a Claim Against Zipwhip

Defendant Zipwhip moves to dismiss Plaintiff's Complaint on the grounds that Plaintiff has not sufficiently alleged that Zipwhip violated the TCPA. Zipwhip contends that Plaintiff has not sufficiently alleged: (1) liability under the TCPA and (2) that an automatic telephone dialing system was used. The Court addresses each argument in turn.

Zipwhip's first argument, that Plaintiff has not alleged that Zipwhip "made" texts within the meaning of the TCPA, is foreclosed by the Court's prior decision on Plaintiff's motion to amend. In this Court's November 28, 2018 Order, the Court held that drawing all inferences in Plaintiff's favor, his allegation that Zipwhip "beg[an] text servicing in a campaign that involved the use of an autodialing system" was sufficient to allege that Zipwhip had "made" text messages within the meaning of the TCPA. Dkt. No. 51 at 11-12 (internal quotation marks omitted). The Court found this was sufficient to state a claim for direct liability under the TCPA. *Id.* Plaintiff makes the same allegations in his First Amended Complaint. Am. Compl. ¶¶ 23, 25. The Court's November 28 Order represents "law of the case." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise."(internal quotation marks omitted)). Zipwhip does not point to "either a change in controlling law or new evidence." *Id.* at 100. To the contrary, Zipwhip effectively reiterates the same arguments presented to the Court on Plaintiff's motion to amend. The Court also "cannot say that manifest injustice will result from adhering to [its] earlier order." *Id.* at 100. Finally, even if the Court's previous Order were not law of the case, none of Zipwhip's arguments warrant departing from the Court's prior decision. Therefore, the Court finds that Plaintiff has sufficiently stated a claim that Zipwhip is directly liable under the TCPA.

The Court also concludes that drawing all reasonable inferences in Plaintiff's favor, he has sufficiently stated a claim that an automatic telephone dialing system was employed to send him the relevant text messages. Various courts have held that to state a claim under the TCPA, a plaintiff must do more than simply allege that an automatic telephone dialing system was used. *Snyder*, 2015 WL 1262591, at *8 ("[T]he vast majority of courts to have considered the issue have found that 'a bare allegation that defendants used an [automatic telephone dialing system] is not enough.'") (quoting *Baranski v. NCO Financial Systems, Inc.*, 13–CV–6349 (ILG) (JMA), 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014)). However, a plaintiff "need not plead specific technical detail regarding the use of an [automatic dialing system]" and must only "describe, in layman's terms, the facts surrounding the calls or the circumstances surrounding the calls that make it plausible that they were using an [automatic dialing system]." *Id.* (quoting *Baranski*, 2014 WL 1155304, at *6). Here, in addition to alleging that an automatic dialing system was employed, Plaintiff alleges that he received an initial message reading "Good morning, this is Jen the service concierge from Lexus of Manhattan. Can I text you regarding a special maintenance offer for your Honda Vehicle?" Amend. Compl. ¶ 20. After Plaintiff allegedly texted "Stop" he then received another message reading "Network MSG: You replied with the word 'stop' which blocks all texts sent from this number. Text back 'unstop' to receive messages again." *Id.* ¶¶ 21-22. This sequence of messages, particularly the seemingly automated nature of the second message Plaintiff received, make it plausible that he was receiving messages through an automatic dialing system. These allegations are thus sufficient to "nudge[]" Plaintiff's "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, the Court hold that Plaintiff has sufficiently alleged that the messages were sent using an automatic telephone dialing system.

Accordingly, Zipwhip's motion to dismiss Plaintiff's Complaint for failure to state a claim is hereby DENIED.

## IV. CONCLUSION

For the reasons given above, BRAM LLC and Zipwhip's motions to dismiss are hereby DENIED. Within one week of the date of this Opinion and Order, Plaintiff shall refile his Amended Complaint with "BRAM Auto Group LLC" replaced by either "Bay Ridge Automotive Corp." or "BRAM Auto Group LLC." Plaintiff shall then serve an amended summons on the proper Defendant.

SO ORDERED.

Dated: September 24, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge